# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS M. JANUSZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| CITY OF CHICAGO, ALAN LUCAS, | ) | Case No. 03 C 4402 |
| PARRIS GEORGE, GINA LIBERTI, | ) | |
| and AMY MUGAVERO LUCAS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Defendants the City of Chicago ("the City"), Alan Lucas, Parris George, Gina Liberti, and Amy Mugavero Lucas (collectively, "the defendants" or the "City defendants"), have filed a "renewed" motion for summary judgment attempting to limit Plaintiff Thomas Janusz's damages based on a prior state court judgment. In addition, the defendants have filed a motion to strike the affidavit of James P. Kenny or, in the alternative, to depose him based on alleged violations of Federal Rules of Civil Procedure 26 and 37. For the reasons set forth below, the court grants in part and denies in part the motion to strike, and grants the motion for summary judgment.

### I. BACKGROUND

Janusz's allegations stem from an incident that took place in December 2001, when Janusz was arrested on drug charges.[1] The circumstances surrounding this arrest are

---

[1] This court is obliged to admonish counsel for deficient summary judgment pleadings. While the defendants' pleadings are by no means perfect (for instance, they do not comply with the court's standing order, which states that "[c]itations to facts in the memorandum must be to both the 56.1(a)(1) documents establishing the fact and to the 56.1(a)(3) statement"), Janusz is the primary offender. In Janusz's response

unusual. Janusz had been managing two Chicago-based funeral homes for Keystone Illinois, Inc. ("Keystone") since 1998. Keystone had purchased one of the funeral homes from Anthony and Daniel Morizzo ("the Morizzos"). Janusz claimed to have uncovered evidence that the Morizzos had violated their non-compete agreement with Keystone, and Keystone filed suit against the Morizzos in October 2001. Janusz was expected to testify, and was concerned that the Morizzos would retaliate against him.

On December 6, 2001, Janusz met a woman named Paula Siragusa. The circumstances surrounding how they met are unclear—Janusz's telling has changed over time—but they eventually ended up in a motel room. Upon leaving the motel, Janusz drove Siragusa to a Cicero gas station. Three Chicago police officers—Officers Lucas, George, and Liberti—were driving by. They claimed to be in the area due to an anonymous tip about a drug transaction. The officers claimed to observe Janusz in the parking lot pacing back and forth with a duffel bag. They also said that they noticed that Janusz's license plate had expired. They approached, and according to Lucas, Siragusa told the officers that Janusz had smoked cocaine and had a plastic cup with cocaine in the front seat of his car. The officers found $4,400 in cash in the duffel bag, and placed

---

to the defendants' statements of material fact ("Resp. to Defs.' SOF"), he repeatedly attempts to "object" to facts on grounds such as relevance or ambiguity instead of straightforwardly admitting or denying those facts (*e.g.*, Resp. to Defs.' SOF ¶¶ 10, 15), he plays word games by restating the defendants' facts in his preferred language instead of directly admitting or denying the fact as stated by the defendants (*e.g.*, *id.* ¶ 13), he attempts to add new facts by "further responding" (*e.g.*, *id.* ¶ 18), and at times his denials do not contain any pinpoint citation that would allow this court to verify the grounds for his denial (*e.g.*, *id.* ¶¶ 46, 55). As this court notes in its standing order, "[f]ailure of the parties to heed the requirements of Rule 56 of the Federal Rules of Civil Procedure and Local General Rules 56.1(a) and 56.1(b) . . . greatly complicates this court's consideration of motions for summary judgment." While the rules may seem trivial, they are critical in allowing the court to focus on the issues in dispute and resolve those issues on the merits. The lack of regard for the court's requirements, combined with the age of this case, counsel in favor of deeming any statements not properly objected to as admitted so that the case can proceed. *See Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (noting that a district court has discretion "to require strict compliance with its local rules governing summary judgment") (citation omitted). Thus, the defendants' statements of fact ¶¶ 1-24, 26-27, 29-38, 40-44, 46, 48-53, and 55-79 are deemed admitted. In addition, certain of the background facts relating to the arrest are taken from Judge Nordberg's earlier opinion. *See Janusz v. City of Chi.*, 797 F. Supp. 2d 884, 886 (N.D. Ill. 2011).

Janusz under arrest. For whatever reason, they let Siragusa—an admitted heroin addict who had been doing drugs at the motel—leave the scene. Janusz's version is a bit different; he claims that Lucas approached Janusz stating that he thought Janusz was a drug dealer, and Lucas asked about the motel room and the gym bag. Janusz also says that he saw Lucas plant a small, white, pebble-sized object into a cup in the front seat of Janusz's car. (Later, the white substance was determined not to be cocaine.)

At the police station, Officer Mugavero (now Mugavero Lucas) joined the other officers. Janusz claims he was coerced into consenting to a search of his apartment, which was located above one of the funeral homes he managed for Keystone. Janusz also claims he was threatened by the officers, both with bodily harm and the threat of being gang-raped in jail. In the search of the apartment, the officers allegedly found crystal methamphetamine, cocaine, and illegal anabolic steroids, as well as $17,810 in cash. Janusz alleges that the officers stole money and jewelry during the search.

Officer Grizzoffi, who had worked for Keystone in the past and knew the Morizzos, made copies of Janusz's confidential police records. Anthony Morizzo got the records in the mail a few days later, and used them to settle the civil suit Keystone had filed by arguing that Janusz's arrest tainted him as a credible witness. Keystone settled the lawsuit, then fired Janusz on January 19, 2002. In May 2002, Janusz filed a motion in state court to quash his arrest. After a hearing, a judge found Officer Lucas's explanation of the events surrounding the arrest to be "unusual." The judge granted the motion, and the prosecution immediately moved to drop the charges against Janusz.

According to his amended state court complaint, Janusz had received good performance reviews throughout his employment with Keystone—including a positive

review the day before his arrest. (*See* Defs.' 56.1(a)(3) Statement, ECF No. 343, Ex. B.) But after his arrest, Keystone suspended Janusz's employment and Brian Durante took over as interim General Manager. On multiple occasions, both Durante and another employee, Thomas Kotrba, told Dorothy Reynolds (also a Keystone employee) that Janusz was "selling crystal meth," that a methamphetamine lab had been found in Janusz's apartment above the funeral home, and that Janusz stole funds from clients; Durante also told non-employees that Janusz was a drug dealer and that Janusz sold illegal drugs. Janusz learned of the statements from Reynolds in about September 2002.

Thereafter, Janusz filed two lawsuits. The first, the "Keystone case," was filed in the Circuit Court of Cook County against Keystone, Durante and Kotrba ("the Keystone defendants"). Janusz alleged breach of his employment contract, defamation, and intentional infliction of emotional distress. Janusz also filed his § 1983 and state law claims against the City and the City police officers in federal court. In his fourth amended federal complaint, he alleges, *inter alia*,[2] state law claims of malicious prosecution (Count III) and abuse of process (Count IV), and seeks compensation from the City under 745 Ill. Comp. Stat. 10/9-102 (Count IX); he also alleges § 1983 claims for conspiracy (Count V), unlawful search of his residence (Count VII) and automobile (Count XII), and false arrest (Count XI); finally, he brings a general claim for respondeat superior (Count X).

---

[2] Janusz continues to recite claims that are no longer a part of the complaint to "preserve them for appellate review." This is both unnecessary and improper. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 924 F. Supp. 894, 896 n.1 (N.D. Ill. 1996) ("Such a repleading of earlier dismissed claims is entirely unnecessary to preserve those claims for appeal because any final appealable order entered in this case would bring up all previous nonappealable orders for appellate review."). The court denied leave to amend the complaint to add a *Monell* claim, as well as state law claims of false arrest and imprisonment, conspiracy, and intentional infliction of emotional distress. The court granted leave to add claims under § 1983 for conspiracy, unlawful search, and false arrest. (*See* ECF Nos. 207, 233, and 334.)

4

There was extensive overlapping discovery between the Keystone case and this case. The Keystone case proceeded to trial first. At the trial, Janusz testified that each of the statements made by Durante and Kotrba were untrue, and that after people in the funeral industry heard the rumors, it was impossible for him to get a job. He argued that the Keystone defendants' behavior exacerbated his pre-existing bipolar disorder and ultimately contributed to giving him post-traumatic stress disorder ("PTSD"). He testified to the loss of his normal life, including his inability to date, go out with friends, work, or participate in physical activities. Janusz's position at the trial was that the conduct of the police was a proximate cause of his disability, and that the Keystone defendants' conduct was also a proximate cause. Janusz's expert psychiatrist, Dr. Carl Wahlstrom, testified that Janusz's bipolar disorder worsened and became harder to treat as a result of Janusz's arrest, the termination of his employment, and his defamation. Dr. Wahlstrom also testified that the conduct surrounding Janusz's arrest did not cause an immediate onset of PTSD; instead, the events together created a "cascade of trauma" creating cumulative stress that led to PTSD. Janusz's labor economics expert, Dr. Malcolm Cohen, testified as to the value of the economic loss Janusz suffered as a result of Keystone's breach of his employment contract.[3] Dr. Cohen found that the total economic loss from Janusz never working again would be $3,527,862.

The jury received an instruction on proximate causation: a proximate cause "need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury." The jury also was instructed to reasonably and fairly compensate Janusz for the following elements of damages, both past and future,

---

[3] Both Dr. Cohen and Dr. Wahlstrom prepared expert reports, and those reports were used in the Keystone case; Janusz intends to use the same reports and the experts intend to offer consistent opinions in this case.

taking into consideration the nature, extent, and duration of the injury and the aggravation of any preexisting ailment or condition:

- the value of earnings lost,
- mental suffering experienced,
- personal humiliation experienced,
- impairment of personal and professional reputation and standing in the community experienced, and
- the loss of a normal life experienced.

The jury ultimately awarded Janusz almost $3.2 million in damages. The damages were apportioned as follows: $177,500 for Janusz's claim that his employment contract was breached by his termination following his arrest; $250,000 in compensatory and $250,000 in punitive damages on his defamation claims; and $2,500,000 in compensatory damages for intentional infliction of emotional distress. Judgment was entered in accordance with the jury's verdict. After post-trial motions were filed and denied, both parties appealed. On September 29, 2009, while the appeal was pending, the trial court was informed that the parties had settled, that "Keystone ha[d] paid Plaintiff all monies due and owing to him as the result of the Judgment previously entered against Keystone," that Janusz had executed a Release and Satisfaction in Keystone's favor, and that the parties stipulated to dismissing the case under 735 Ill. Comp. Stat. 5/12-183 and Illinois Supreme Court Rule 309. (*See* Defs.' 56.1(a)(3) Statement, ECF No. 343, Ex. I.) The judge, finding that "the Judgment previously entered against Keystone in the amount of Three-Million One-Hundred and Seventy-Seventy Thousand Five-Hundred and 00/100s United States Dollars ($3,177,500.00) has been remitted and paid in full," dismissed the case with prejudice.

Meanwhile, the federal case was progressing. In April 2010 the City defendants moved for summary judgment, and Judge Nordberg granted in part and denied in part

6

that motion. A few individuals were dismissed from particular counts, but most of Janusz's case will proceed to a trial on the merits. Relevant here, in their summary judgment briefs the parties raised the issue of damages: the defendants claimed that Janusz's claims to emotional damages, permanent disability and lost wages were barred under the single recovery rule and the doctrine of collateral estoppel based on the fact that Janusz had already collected a significant amount in the Keystone case, whereas Janusz argued that he had two separate and divisible injuries that would allow him to collect. *Janusz*, 797 F. Supp. 2d at 895. Judge Nordberg declined to rule on the issue, stating:

> Neither side has provided a full discussion of the law or the facts, nor has either side provided a satisfactory method for figuring out a way to apportion the allegedly separate damage claims. Still, we note that defendants have raised a number of legitimate questions. It is clear that plaintiff cannot recover twice for the same injuries. And plaintiff has recovered a significant amount of emotional damages in that case ($2.5 million for emotional distress). Moreover, in the *Keystone* case, both plaintiff's counsel and his expert generally treated the damages as if they were an indivisible injury which only started after the firing. . . . [I]n plaintiff's complaint in this case, he makes statements suggesting the injuries are indivisible. Plaintiff never responds directly to these specific arguments and instead relies on his claim (based on one case) that it is defendants' burden to unravel the ambiguity from the *Keystone* case. Rather than ordering further briefing on this issue, given that we will not [be] overseeing the trial of this case, we conclude that it is best to leave this issue open to give the Judge who eventually receives the case wide latitude to determine how to resolve this question at the upcoming trial.

*Id.* at 895-96 (citations omitted).

Now before this court is defendants' renewed summary judgment motion on this issue. The defendants concede that Janusz has not recovered damages for injuries based on his Fourth Amendment or malicious prosecution/abuse of process claims. However, they argue that Janusz was fully compensated in the Keystone case for his claims for lost

wages, emotional damage from PTSD, exacerbation of his bipolar disorder, and permanent disability.

In addition, in his response to the motion for summary judgment on damages, Janusz attempts to rely on an affidavit from James P. Kenny. The affidavit is dated January 17, 2012, and in the affidavit Kenny, one of Janusz's attorneys, details the circumstances surrounding an alleged settlement in the Keystone case. The settlement agreement is attached as an exhibit to Janusz's statement of additional facts. (*See* Pl.'s Statement in Supp. of Resp., ECF No. 356.) Janusz's theory of the affidavit's relevance is as follows. As noted, both sides filed post-trial motions in the Keystone case, and when those motions were denied, both parties appealed. According to Kenny, while the appeals were still pending—in September 2009—the parties entered into a settlement agreement that specifically purported *not* to include "any alleged damages or injuries Plaintiff is seeking to recover . . . in the [federal] case." (*See* Pl's Resp. in Opp'n to Defs.' Mot. for Summ. J. at 3.) In the settlement agreement Keystone agrees to pay Janusz $3 million, and the agreement purports to reallocate that amount as $10,000 for Janusz's current and past medical bills, $390,000 for future medical bills, $400,000 for defamation, $125,000 for lost wages, $500,000 for enhancement of the bipolar condition, and $1,575,000 for physical injuries "not directly attributable to emotional damages." Kenny states that Keystone's attorneys prepared the settlement agreement and that on September 29, 2009 the trial judge vacated the judgment and released the appeal bond. (*See* Aff. of Kenny, ECF No. 356.)

The defendants argue that the affidavit should be stricken under Rule 37(c)(1), because Janusz failed to list Kenny as a witness under Rule 26(a)(3) and did not

supplement as required under Rule 26(e)(1). The defendants also argue that the affidavit contains inadmissible hearsay. The court addresses each issue in turn.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, the court will grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Doubts about the existence of a material fact "should be resolved in favor of the nonmoving party and summary judgment ought to be denied." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

## III. ANALYSIS

### A. Motion to Strike

The court first addresses the defendants' motion to strike Kenny's affidavit. As noted, the defendants argue that Janusz's failure to disclose Kenny and the settlement

agreement until now violates the federal rules and warrants the sanction of striking the affidavit in its entirety; they also have argued that the affidavit is inadmissible hearsay. Janusz admits that he failed to raise the settlement agreement or disclose Kenny as a witness during his prior summary judgment briefing before Judge Nordberg, but claims that once he was able to direct his full attention to the issue, he suddenly "realized" that the 2009 settlement with the Keystone defendants was relevant. (Pl.'s Resp. to Defs.' Mot. to Strike at 2.) He argues that the affidavit is admissible non-hearsay and should not be stricken, both because Kenny is not a witness under Rule 26 and because the defendants had notice of the settlement and merely are "[f]eigning surprise."

The court generally is sympathetic to the defendants' complaints, but the affidavit is not excludable hearsay. For instance, if called as a witness, Kenny could testify (as he swears in his affidavit) that he represented Janusz in the Keystone case, that a judgment was entered on April 16, 2009, that both parties subsequently filed post-trial motions which were denied, that the parties settled the case while their respective appeals were pending, and that the settlement agreement provided an allocation of the settlement proceeds. At the summary judgment stage, "[t]he evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Here, the facts surrounding the execution of the Keystone settlement agreement appear to be within Kenny's personal knowledge—he was Janusz's trial counsel during the state case—and those facts are admissible in content. The court agrees with the defendants that Kenny's proffered facts are offered for their truth, but to constitute hearsay that evidence also must consist of out-of-court statements. *See Gordon*

*v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) ("[H]earsay is defined as an out-of-court statement offered by a party 'to prove the truth of the matter asserted.' Such statements . . . may not be used to create a genuine issue of material fact at the summary judgment stage."). Kenny's affidavit is not hearsay.

But that does not help Janusz. The very existence of this affidavit means that Kenny has knowledge upon which Janusz seeks to rely in opposing summary judgment; this in turn means that Janusz's attempt to argue that Kenny is not a "witness" is unavailing. Thus, under Rule 26 Janusz should have disclosed this information a long, long time ago. Moreover, as the defendants point out, Janusz's claim to have only recently comprehended the import of the settlement agreement—after going through a full round of summary judgment briefing, including briefing on the damages issue—is belied by the terms of the agreement itself, which specifically attempts to reallocate damages so as to avoid significant overlap with the damages Janusz is seeking in this case.

Under Rule 37(c)(1), Janusz "is not allowed to use [the settlement information] to supply evidence on a motion, at a hearing, or at a trial, unless the [discovery] failure was substantially justified or is harmless." Janusz does not even attempt to argue that the failure was justified, but instead claims that his oversight is harmless because the City defendants were aware of the settlement agreement; he also implies that the defendants had knowledge of the agreement's terms. The court cannot credit any speculation as to the City defendants' knowledge of the actual terms of the agreement. Summary judgment is the "'put up or shut up' moment in litigation," meaning that the non-moving party must present the court with the evidence it contends will prove its case. *See Goodman v. Nat'l*

*v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) ("[H]earsay is defined as an out-of-court statement offered by a party 'to prove the truth of the matter asserted.' Such statements . . . may not be used to create a genuine issue of material fact at the summary judgment stage."). Kenny's affidavit is not hearsay.

But that does not help Janusz. The very existence of this affidavit means that Kenny has knowledge upon which Janusz seeks to rely in opposing summary judgment; this in turn means that Janusz's attempt to argue that Kenny is not a "witness" is unavailing. Thus, under Rule 26 Janusz should have disclosed this information a long, long time ago. Moreover, as the defendants point out, Janusz's claim to have only recently comprehended the import of the settlement agreement—after going through a full round of summary judgment briefing, including briefing on the damages issue—is belied by the terms of the agreement itself, which specifically attempts to reallocate damages so as to avoid significant overlap with the damages Janusz is seeking in this case.

Under Rule 37(c)(1), Janusz "is not allowed to use [the settlement information] to supply evidence on a motion, at a hearing, or at a trial, unless the [discovery] failure was substantially justified or is harmless." Janusz does not even attempt to argue that the failure was justified, but instead claims that his oversight is harmless because the City defendants were aware of the settlement agreement; he also implies that the defendants had knowledge of the agreement's terms. The court cannot credit any speculation as to the City defendants' knowledge of the actual terms of the agreement. Summary judgment is the "'put up or shut up' moment in litigation," meaning that the non-moving party must present the court with the evidence it contends will prove its case. *See Goodman v. Nat'l*

*Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The City defendants may have been on notice that there was a settlement agreement by virtue of Keystone's motion to dismiss. But the stipulation and the state court's order are unambiguous—both plainly state that Keystone paid Janusz all of the money owed to him as a result of the jury's verdict. (*See* Defs.' 56.1(a)(3) Statement, ECF No. 343, Ex. I.) In fact, the state court's order is even more explicit: "this Court finds that the Judgment previously entered against Keystone in the amount of [the jury verdict] has been remitted and satisfied in full. Accordingly, based upon the Release and Satisfaction and the Stipulation, this court hereby vacates the Judgment." (*Id.*) The clear implication in the public record was that any settlement included a full payment and release of the entire judgment amount. The court cannot conclude that Janusz's failure to disclose this highly relevant information to the City defendants was harmless.

The defendants urge the court to strike the affidavit and the settlement agreement entirely. However, this court is mindful that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits," *Musser v. Gentiva Health Services*, 356 F.3d 751, 759-60 (7th Cir. 2004) (internal quotation marks and citation omitted), and district courts are to "carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Id.* Alternate sanctions might include ordering the payment of reasonable expenses, including attorney's fees, caused by Janusz's failure; informing the jury of the failure; or striking the offending material in whole or in part. Fed. R. Civ. P. 37. Here, the court believes the settlement agreement is critical to a determination on the merits, and so the court will not strike the information entirely. Instead, the court orders Janusz to pay all of

the expenses, including the attorney's fees, incurred by the defendants as a result of preparing and filing the motion to strike. The defendants shall submit a bill of costs to the court and, upon receipt and verification, the court will determine the amount owed by Janusz.

**B. Motion for Summary Judgment**

Turning now to the heart of the issue, the defendants offer three reasons why damages relating to lost wages and loss of normal life are not recoverable in this case. First, they argue that Illinois' single recovery rule precludes Janusz from recovering for these injuries, because he already recovered for them in the Keystone case. In support, the defendants point to the extensive overlapping discovery between the two cases, the fact that Janusz's expert witnesses will rely on the same reports and offer largely the same testimony in this case, and the fact that Janusz's theory of the case before the state court was that the Keystone defendants and the City defendants together proximately caused these injuries. Second, the defendants argue that Janusz is collaterally estopped from relitigating these damages claims, because he already received a final adjudication on the merits in the state court. Finally, the defendants urge this court to apply the doctrine of judicial estoppel to prevent Janusz from relitigating these damages, by forcing Janusz to adhere to his single, indivisible injury theory in this case. If the court does so, then Janusz would be precluded from recovering these damages by virtue of the single recovery rule.

Janusz chooses not address the defendants' argument that there is but one single, indivisible injury at issue for which the Keystone defendants and the City defendants are jointly and severally liable. (*See* Pl.'s Resp. in Opp'n at 2 n.2.) Thus, Janusz has

conceded that point.[4] Instead, he puts all of his eggs in a different basket: he argues that since the Keystone parties agreed to, and the state court judge did, vacate the judgment under the settlement agreement, he never had a final and binding judgment on the merits, and so his emotional distress injuries are not limited to the amount he was awarded by the Keystone jury. In other words, he claims a vacated judgment has no effect. He also argues that the defendants are not entitled to any setoff as a result of the settlement, because that issue was not presented in the defendants' motion for summary judgment.[5] And even assuming that the defendants are entitled to setoff, Janusz argues that the amount will be dictated by the allocations made in the settlement agreement, and the City defendants will bear the burden of establishing what portion of the settlement is attributable to injuries caused jointly by the City defendants and the Keystone defendants.

The defendants reply that the prohibition against double recovery applies even where a judgment is subsequently vacated—that is, the single recovery rule applies even if collateral estoppel does not. They also claim that the state court record clearly establishes that the Keystone judgment was vacated upon release and satisfaction of the full amount of the jury's verdict, not upon compromise and settlement, and that Janusz should be judicially estopped from stating otherwise because he made that representation to the state court. Finally, the defendants agree that setoff should not be addressed until after a judgment is entered, but note that the Keystone settlement agreement "smacks of an attempt to do an end run around setoff" by attempting to reallocate the damages to injuries that would not be attributable to the City defendants.

---

[4] To the extent that Janusz attempts to make some sort of merits argument in one of his footnotes, Janusz waives that argument by presenting it in such a cursory fashion. *See Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009).

[5] As Janusz failed to establish the defendants' knowledge of the settlement agreement's terms, the defendants were in no position to raise the issue of setoff in their opening brief.

The court agrees with the defendants that Janusz is judicially estopped from arguing that he did not receive a full satisfaction of the judgment against the Keystone defendants in the state court case. While the confines of the doctrine of judicial estoppel are not set in stone, its purpose is to deter fraud in litigation, and it generally involves (1) a clearly inconsistent position taken in the first of two judicial proceedings; (2) success in the first proceeding as a result of that position, "'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'"; and (3) an unfair detriment to the opposing party if not estopped. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

All of these factors exist here: Janusz and the Keystone defendants jointly represented to the state court that "in accordance with the Release and Satisfaction of Judgment attached to the Motion [to Dismiss], Keystone has paid Plaintiff all monies due and owing to him *as a result of the Judgment previously entered against Keystone. The Judgment having been thus fully satisfied*, the Parties agree that this Court can and should vacate the Judgment pursuant to [735 Ill. Comp. Stat. 5/12-183]." (*See* Defs.' 56.1(a)(3) Statement, ECF No. 343, Ex. I (emphasis added).) Janusz's present attempt to argue that the settlement was for less than the amount of the jury verdict or that there has been some alternate allocation is at odds with his earlier position. Second, the state court expressly relied on this representation—going so far as to state the precise amount of the jury's verdict—when it entered an order dismissing the appeal, discharging the appeal bond, and vacating the judgment. Finally, permitting Janusz to start from scratch in arguing his

damages would clearly be to the detriment of the City defendants. The court will not permit this result.

The conclusion that judicial estoppel should apply is underscored by the policy considerations encompassed by the Joint Tortfeasor Contribution Act ("the Contribution Act"), 740 Ill. Comp. Stat. 100.01. Section 2 of the Contribution Act states that where two or more persons are "subject to liability in tort arising out of the same injury . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them." In addition, the Contribution Act contemplates situations in which the injured party attempts to settle with one of the tortfeasors:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 Ill. Comp. Stat. 100/2(c). The purpose of this language is not only to prevent double recovery, but also to ensure that a nonsettling party is not required to pay more than its *pro rata* share of the liability. *See Thornton v. Garcini*, 928 N.E.2d 804, 813 (Ill. 2010); *Wilson v. Hoffman Group, Inc.*, 546 N.E.2d 524, 531 (Ill. 1989) ("Illinois has a public policy of protecting the financial interests of nonsettling parties in a settlement, and sections 2(c) and (d) of the Contribution Act reflect that policy."); *Patton v. Carbondale Clinic, S.C.*, 641 N.E.2d 427, 434 (Ill. 1994).

Under the Contribution Act, "[t]he requirement of 'good faith' is the only limitation . . . place[d] upon the parties' right to settle." *Dubina v. Mesirow Realty Devel., Inc.*, 756 N.E.2d 836, 840 (Ill. 2001). "Good faith" is not defined by the statute; instead,

the trial court determines whether a settlement complies with this requirement by evaluating all of the surrounding circumstances. This allows the court to guard against unfair dealing, collusion, or wrongful conduct by the settling parties. *See id.* Where an agreement is inconsistent with the policies underlying the Contribution Act, the settlement agreement cannot satisfy the "good faith" requirement. *See Johnson v. United Airlines*, 784 N.E.2d 812, 818 (Ill. 2003); *Dubina*, 756 N.E.2 at 840. Such a situation arises where the effect of the settlement is to shift "a disproportionally large and inequitable portion of the settling defendant's liability onto the shoulders of another," *Assoc. Aviation Underwriters, Inc. v. Aon Corp.*, 800 N.E.2d 424, 435 (Ill. App. Ct. 2003), or where the settlement attempts to deprive a nonsettling party of its statutory right to a setoff, *see Dubina*, 756 N.E.2d at 842. Perhaps for this reason, the settling party bears the initial burden of making a preliminary showing that the settlement was negotiated in good faith; only after that preliminary showing is made does the burden shift to the nonsettling party to prove the absence of good faith by a preponderance of the evidence. *Johnson*, 784 N.E.2d at 820.

This court is in no position to make a good faith determination with regard to the settlement agreement, as this court was not privy to the circumstances surrounding the state court case. *See Patton*, 641 N.E.2d 427, 433-34. But at the very least, the reapportionment of damages in such a drastic fashion—and in a manner that would deprive the City defendants of much of their right to a setoff—highlights the need to apply judicial estoppel in this case. The jury determined that Janusz was owed $3,177,500 in damages by the Keystone defendants: $177,500 for lost wages from the breach of contract; $250,000 in compensatory and $250,000 in punitive damages on his

17

defamation claims; and $2,500,000 in compensatory damages for intentional infliction of emotional distress. By contrast, under the settlement agreement Keystone agreed to pay $3,000,000: $125,000 for lost wages; $400,000 for defamation; $500,000 for enhancement of the bipolar condition; $10,000 for current and past medical bills; $390,000 for future medical bills; and $1,575,000 for physical injuries "not directly attributable to emotional damages." Of course, "damages are not assessed 'by defendant' or 'by claim' but 'for' an injury," *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 640 (7th Cir. 2011), and this reallocation would shift significant sums from emotional injuries to physical injuries.

Because Janusz conceded that only single, indivisible injuries are at issue, and because he is estopped from arguing that he received less than a full satisfaction of the jury's verdict, his potential recovery for these injuries is capped at $3,177,500 as allocated by the jury. These injuries cannot be relitigated in the federal case. Under Illinois' single recovery rule, "the plaintiff may not divide up her claim and bring successive proceedings to obtain additional damages. . . . 'regardless of whether or not the plaintiff has recovered all that he or she might have recovered' in the initial proceeding." *Saichek v. Lupa*, 787 N.E.2d 827, 835 (Ill. 2003) (quoting *Dillon v. Evanston Hospital*, 771 N.E.2d 357 (2002)).

*Saichek* itself is instructive. There, the Illinois Supreme Court addressed a situation in which the plaintiff obtained a default judgment against one tortfeasor; the trial court held a hearing to determine the plaintiff's amount of damages, and the plaintiff received a full satisfaction of that judgment. The plaintiff then attempted to proceed with her cause of action against the second tortfeasor. The Illinois Supreme Court held that

18

since the judgment was valid and final and the amount of damages been determined by the trial court, the plaintiff had already received all that she was entitled to receive for her injuries. *Id.* Thus, she no longer had an enforceable claim, and the court barred her from further action against anyone who would be liable for the same damages. *Id.* The court recognized that any apportionment of liability for those damages would be resolved in a contribution action, not by permitting the plaintiff to bring suit against the second tortfeasor. *Id.* at 835. Notably, the court also found that the result was not inequitable, since it was the plaintiff's choice to proceed with her case as she did.

The same is true here. By virtue of the judicial estoppel, Janusz is treated as having received a full satisfaction of the jury's award in the Keystone case. Thus, for these injuries he no longer has an enforceable claim against the City. Any contribution issues will need to be addressed between the City defendants and the Keystone defendants—Janusz has no part to play as to that question.

### IV. CONCLUSION

For the reasons state above, the court grants in part and denies in part the defendants' motion to strike, and grants the defendants' motion for summary judgment as to the injuries for which Janusz was already compensated by the Keystone defendants.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 10, 2012