UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS M. JANUSZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 03 C 4402 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| CITY OF CHICAGO, ALAN LUCAS, | ) |
| PARRIS GEORGE, GINA LIBERTI, | ) |
| and AMY MUGAVERO LUCAS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Thomas Janusz brings claims under § 1983 for false arrest, unreasonable search, and conspiracy, and under state law for malicious prosecution and abuse of process. Before the court are the parties' motions in limine.

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court has broad discretion to rule on evidentiary questions raised in motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Nevertheless, a court should grant a motion in limine excluding evidence only when the movant shows that the evidence "is inadmissible on all potential grounds." *CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 411 B.R. 591, 597 (N.D. Ill. 2009) (citing *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003), and *Robenhorst v. Dematic Corp.*, No. 05 C 3192, 2008 WL 1821519, at *3 (N.D. Ill. Apr. 22, 2008)). "'[E]videntiary rulings should [ordinarily] be deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in proper context.'" *Id.* (quoting *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). Rulings on motions in limine are preliminary; "the district court may adjust a motion in limine during the course of a trial." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce*, 469 U.S. at 41-42); *Luce*, 469 U.S. at 41-42 ("[A] ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). Accordingly, the parties may renew their objections at trial as appropriate.

**Plaintiff's Motion in Limine Number 1: To Bar Evidence or Testimony Regarding His Possession or Use of Drugs**

Janusz moves to bar any evidence that he possessed or used drugs before or after the night of his arrest. Defendants argue that Plaintiff's use of cocaine is relevant because it "was known to the Defendants" and supports their assertion that they had probable cause to arrest Janusz. But Defendants do not explain how they could have known about Janusz's drug use before they searched his apartment and found drugs, an event which occurred *after* Defendants had already arrested Janusz. Evidence of Janusz's drug use is irrelevant unless Defendants knew about it before they arrested him. Unless Defendants can establish at trial that this was the case, the court will not allow the evidence. Accordingly, the motion is granted.

**Plaintiff's Motion in Limine Number 2: To Bar Evidence of Prior Arrests**

Janusz moves to bar evidence of his prior arrests. Because Defendants state that they "do not intend to introduce evidence or elicit testimony regarding Plaintiff's 1999 and 2002 arrests," the motion is granted by agreement. If, at trial, Defendants believe that Janusz has opened the door to evidence of his prior arrests, then they can raise the issue with the court at that time.

**Plaintiff's Motion in Limine Number 3: To Bar Defendants from Using the Term "Garden Variety" Emotional Distress**

Janusz anticipates that Defendants may argue to the jury that Janusz cannot recover damages other than damages for "garden variety" emotional distress. Janusz moves to bar Defendants from using the phrase "garden variety" emotional distress, contending that the phrase is imprecise and "could be confusing and prejudicial." Janusz will have an opportunity to cure any confusion or prejudice during his counsel's own presentation to the jury, and, as Janusz acknowledges, the court will ultimately instruct the jury as to the law. The motion is denied.

**Defendants' Motion in Limine Number 1: To Bar Plaintiff from Presenting Evidence, Testimony, or Argument Relating to Damages for Emotional Injuries or Lost Wages**

Defendants previously moved for summary judgment on Janusz's damages claims, contending that Janusz was fully compensated in his state court case for his lost wages, emotional damage from PTSD, exacerbation of his bipolar disorder, and permanent disability. Defendants conceded, however, that Janusz is entitled to seek damages in this case arising from his Fourth Amendment, malicious prosecution, and abuse of process claims. (Defs.' Mot. for Summ. J. 15, ECF No. 344.) They noted that Janusz's Fourth Amendment claims involve damages associated with his arrest, the search of his home, and the search of his car. And they argued that Janusz's compensable emotional distress is limited to "garden variety" emotional distress.

In Defendants' motion for summary judgment, they requested that the court limit the damages that Janusz may recover to these damages and preclude him from seeking other damages for which he was already compensated in his state court case. The court granted Defendants' motion.

Defendants now move in limine to bar Janusz from "presenting any evidence, testimony, or argument relating to damages for emotional injuries or lost wages." Defendants argue that

introducing such evidence would violate the court's summary judgment order. They contend, for example, that Janusz has no reason to call the mental health professionals who treated him because their testimony is only relevant to establish damages that Janusz has already recovered.

Although Defendants are correct that, consistent with the court's prior rulings, Janusz may not recover damages representing the value of past and future lost earnings, mental suffering, personal humiliation, and the loss of normal life, the relief that Defendants seek—to bar Janusz from "presenting any evidence, testimony, or argument relating to damages for emotional injuries or lost wages"—is too broad because it encompasses evidence that is admissible for other purposes. For example, it encompasses evidence relating to the "garden variety" emotional injury associated with Janusz's arrest and prosecution—an injury for which Defendants concede Janusz may seek damages in this case. Furthermore, evidence of emotional injury or lost wages may be relevant to establish liability. To succeed on his state law malicious prosecution claim, for example, Janusz must prove that he suffered an injury. *See Kozel v. Vill. of Dolton*, 804 F. Supp. 2d 740, 746 (N.D. Ill. 2011) (citing *Aguirre v. City of Chi.*, 887 N.E.2d 656, 662 (2008)). To the extent that Janusz seeks to offer evidence for either of these two purposes, the court will not bar the evidence, subject to Rule 403 considerations. With this understanding, the motion is denied.

**Defendants' Motion in Limine Number 2: To Bar Plaintiff from Seeking Damages for the Cost of Legal Services Not Actually Incurred and Not Recoverable at Trial**

Janusz agrees that he will not seek any legal fees from the criminal case in excess of what he actually paid. The motion is granted.

**Defendants' Motion in Limine Number 3: To Bar the Testimony of Dr. James Pastor**

Defendants move to bar the testimony of Dr. James Pastor. Janusz retained Pastor to offer expert opinions regarding two issues: (1) whether the Chicago Police Department's

("CPD's") disciplinary process and system was adequate to identify problematic police officers, and (2) whether Defendants' conduct relating to Janusz's arrest was in accordance with normal police procedures and protocols. Because Janusz agrees that the first issue only relates to his *Monell* claim—a claim which is no longer part of this case—Janusz agrees not to present any testimony with respect to that issue. The only dispute concerns whether Pastor may testify that Defendants' conduct was not in accordance with normal police procedures and protocols.

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court. *See Naem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In turn, under *Daubert*, this court must function as a "gatekeeper" to "ensure the reliability and relevancy of expert testimony." *Naeem*, 444 F.3d at 607 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). "To do so, the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed. R. Evid. 702). The court must also determine if an expert is offering legal conclusions, as "experts cannot make those." *See United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008).

Defendants specifically challenge Pastor's opinions that (1) he does not believe that the anonymous call led to the surveillance which resulted in the arrest; (2) the release of the female passenger in Mr. Janusz's vehicle, Paula Siragusa, was both legally questionable and procedurally improper; and (3) the failure to detect and correct problematic behavior ultimately led to the unconstitutional arrest of Janusz.

Janusz does not say whether he intends to offer these opinions at trial. He says that he intends to offer testimony from Pastor "consistent with the opinions in his deposition, report and supplemental report." According to Janusz, such opinions include:

> (a) what is and is not proper and normal police procedure for handling an anonymous tip;
> (b) what an EDGE mission is and what proper procedure is for an EDGE mission;
> (c) whether Defendants acted outside the scope of normal police procedure with respect to their handling of Siragusa;
> (d) the significance of the CPD's "attendance and assignment" record;
> (e) the significance of a Chicago Police Officer making an arrest in another jurisdiction; and
> (f) the significance of Lucas failing to include certain information in the arrest report.

Janusz contends that Pastor's experience in the field as a tactical police officer qualifies him to testify as an expert about CPD procedure and protocol. He claims that evidence that Defendants deviated from such procedures and protocols on the night in question supports his claim that Defendants conspired to unlawfully arrest him.

Before addressing the admissibility of each challenged opinion, the court first considers Pastor's qualifications. According to his report, Pastor worked as a tactical police officer in the CPD, where he was involved in thousands of traffic and street stops and approximately 100 search warrants. He later worked as an Assistant Department Advocate for the CPD, where he regularly dealt with legal and policy matters relating to discipline of department members. In that capacity, he reviewed thousands of complaints. He holds a Ph.D. in Public Policy Analysis from the University of Illinois at Chicago, a J.D. from John Marshall Law School, an M.A. in

Criminal Justice from the University of Illinois at Chicago, and a B.S. in Law Enforcement Administration and in Sociology from Western Illinois University. He is an Associate Professor of Public Safety at Calumet College of St. Joseph.

The court finds that, based on his education and experience, Pastor is qualified to offer opinions concerning what the applicable CPD policies and procedures are and whether such policies and procedures were followed in this case. *See Sommerfield v. City of Chi.*, 254 F.R.D. 317, 320 (N.D. Ill. 2008) (finding Pastor qualified to give opinions regarding police policies and procedures). Janusz must disclose any such opinions to Defendants, as well as the bases and reasons for them. Fed. R. Civ. P. 26(a)(2)(B)(i). Specifically, Janusz must disclose the CPD policies and procedures on which Pastor relied to conclude that Defendants failed to act in accordance with such procedures. Furthermore, Pastor may not testify that he believes Defendants "set up" Janusz, or that the Defendants' account of the events is unreasonable. The jury is just as capable of drawing such inferences. *See Sommerfield*, 254 F.R.D. at 329 ("[N]o expert testimony is needed when the subject matter of the testimony is clearly within the average person's grasp.").

With these principles in mind, the court addresses each of the challenged opinions in turn.

**1. "I do not believe that the 'anonymous call' led to the surveillance which resulted in the arrest."**

In his report, Pastor states several reasons why he believes that the anonymous call did not lead to Janusz's arrest. Pastor notes that the caller gave only basic information about the pending drug deal, did not describe the occupants of the vehicle, did not say how the caller obtained the information, and did not provide any identifying information. He concludes that "[n]o reasonable police officer would chase around such empty information."

Janusz cites *Trevino v. City of Rock Island Police Department*, 91 F. Supp. 2d 1204, 1206 (C.D. Ill. 2000) for the proposition that:

> It is not uncommon for experienced police officers to appear and give expert testimony based on specialized knowledge gained through their years on the job, [and] such testimony is generally derived from the frame of reference that these officers develop as a result of their repeated involvement in the situations forming the basis for their testimony.

For example, the *Trevino* court noted that courts routinely allow expert testimony from police officers involved in the investigation of drug trafficking to offer opinions on the issue of whether narcotics are accompanied by the indicia of possession for distribution as opposed to personal use. *Id.* "By virtue of the officers' participation in and observations made during the course of numerous drug investigations over time, courts have recognized that these officers are uniquely qualified to describe the various indicators that routinely accompany drugs intended for distribution . . . ." *Id.*

Here, by contrast, nothing in Pastor's experience suggests that he is uniquely qualified to determine whether Defendants were responding to an anonymous tip or were part of a conspiracy to set up Janusz. "Testimony of a witness is inadmissible if it 'consists of nothing more than drawing inferences from the evidence that [the alleged expert] was no more qualified than the jury to draw.'" *Dean ex rel. Williams v. Watson*, No. 93 C 1846, 1995 WL 692020, at *6 (N.D. Ill. Nov. 16, 1995) (alteration in original) (quoting *U.S. v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991)). The fact that Pastor was himself a police officer does not make him any more qualified than the jury to draw the common-sense inference that an anonymous caller who provides limited information about a possible crime should be treated with some skepticism, and that it would be unusual for a police officer to take extraordinary steps to investigate such a call. Accordingly, the court will not allow this opinion.

**2. "The release of the female passenger in Mr. Janusz's vehicle was both legally questionable and procedurally improper."**

Pastor claims that it is "clearly violative of department policy to simply allow a fact witness, not to mention a potential offender, to leave the scene without mentioning her presence." He states that CPD policies and procedures provide that the police should have noted the identity of the woman, Paula Siragusa, the reasons for her release, and that the police should have conducted a background check on her. Because Defendants failed to take these steps, Pastor concludes that their actions were legally questionable and procedurally improper.

Unlike his opinion that the anonymous call did not lead to Janusz's arrest, Pastor's experience as a police officer who is familiar with CPD policies and procedures renders him uniquely qualified to conclude whether the release of Siragusa was consistent with the law and CPD policies and procedures. Such an opinion would help the jury understand whether Defendants acted unusually on the night in question, which is relevant to Janusz's conspiracy claim.

Defendants object to Pastor's opinion because he does not state specifically which policies and procedures of the CPD form the basis of his opinion. The court agrees that this information should have been disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), which requires that the expert report include "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i). If Janusz intends to elicit expert opinions from Pastor concerning this topic, Janusz must disclose the specific policies and procedures that form the basis of his opinion.

Defendants also challenge the conclusion that the release of Siragusa was "legally questionable," claiming that it is an impermissible legal conclusion. Expert witnesses may not offer "opinions about legal issues that . . . determine the outcome of the case." *Naeem*, 444 F.3d

at 610 (citing *United States v. Sinclair*, 74 F.3d 753, 757-58 n.1 (7th Cir. 1996)). But here, the opinion that releasing Siragusa was legally questionable does not determine the outcome of the case; rather, it is only a piece of evidence regarding whether the Defendants conspired to unlawfully arrest Janusz. *See Naeem*, 444 F.3d at 610 (allowing expert to offer legal conclusion that did not determine the outcome of the case). If Janusz discloses the basis and reasons for this opinion, the court will not bar it simply because it is a legal conclusion.

### 3. "The failure to detect and correct problematic behavior ultimately led to the unconstitutional arrest of Janusz."

Because the *Monell* claim is no longer part of this case, this opinion is irrelevant. The opinion that Janusz's arrest is "unconstitutional" is inadmissible because it is a legal conclusion that determines the outcome of the case. *Id.*

### 4. "What is and Is Not Proper and Normal Police Procedure for Handling an Anonymous Tip"

Janusz states that he intends to offer testimony from Pastor regarding "what is and is not proper and normal police procedure for handling an anonymous tip." The problem with this "opinion," as Defendants point out, is that Pastor's expert report does not disclose any opinions about this topic. Instead, Pastor merely recites the facts of this case and then concludes that Defendants actions were "unreasonable" and that their explanation of what happened is "absurd." As discussed above, these opinions are inadmissible because Pastor is no more qualified than the jury to draw these inferences.

If Janusz intends to elicit expert opinions from Pastor concerning what is proper and normal police procedure for handling an anonymous tip, he must disclose those opinions.

### 5. "What an EDGE mission is and what proper procedure is for an EDGE mission"

Janusz must also disclose Pastor's opinions concerning proper procedure for an EDGE mission if he wishes to elicit such opinions at trial. The only opinion that Pastor discloses in his

report concerning this topic is that "a number of reports and related statistics were to be completed for an EDGE mission . . . . ." Furthermore, Pastor may not testify that he "question[s] whether an EDGE mission actually took place on December 6, 2011" because he is no more qualified than the jury to draw this inference and because "[t]here is nothing helpful about this subjective and imprecise assessment . . . ." *Sommerfield*, 254 F.R.D. at 333.

### 6. "Procedure with Respect to Siragusa"

As discussed above, Pastor may testify that Defendants did not follow CPD procedures by releasing Siragusa, so long as Janusz discloses which specific policies and procedures form the basis of this opinion.

### 7. "The Significance of the CPD's 'Attendance and Assignment' Record"

Pastor opines that "[s]ince the A & A Sheets show Officer Liberti in another car with other officers, her presence with Lucas and George is problematic—and is violative of department policy." As with Pastor's other opinions regarding compliance with CPD policies, Janusz must disclose which specific policies and procedures form the basis of this opinion in order for the opinion to be allowable at trial.

### 8. "The Significance of a Chicago Police Officer Making an Arrest in Another Jurisdiction"

Pastor opines that "if one believes that [Defendants] had information of a pending narcotics transaction in Cicero, they should have notified the Cicero Police Department." At his deposition, Pastor testified that this opinion is based on a police custom that an officer from another jurisdiction will contact a local police department, as a courtesy, before making an arrest in the local police department's jurisidiction. Because Janusz has disclosed the basis for this opinion, the court will allow it.

**9. "The Significance of [Defendant] Lucas Failing to Include Certain Information in the Arrest Report"**

Pastor may offer opinions concerning CPD policy and procedure concerning what ought to be included in an arrest report. He may opine on whether those policies and procedures were followed in this case, so long as he discloses which specific policies and procedures form the basis of his opinion. Pastor may not testify that Officer Lucas's story is "unbelievable," that it "defies explanation that these experienced tactical police officers were actually on a stake out," or that "the underlying basis for the officers' presence . . . [is] problematic." He is no more qualified than the jury to make these inferences, and such imprecise assessments would not be helpful to the trier of fact.

\*     \*     \*

The motion is granted in part and denied in part. Because Janusz failed to disclose many of Pastor's opinions regarding CPD policies and procedures, as well as the bases and reasons for these opinions, the exclusion of the opinions is "automatic and mandatory . . . unless non-disclosure was justified or harmless." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (citing Fed. R. Civ. P. 37)(c)(1)). If Janusz discloses additional opinions, Defendants may renew their motion to bar on the ground that Janusz's failure to disclose was neither justified nor harmless.

**Defendants' Motion in Limine Number 4: To Bar All *Monell*-Related Evidence**

Janusz agrees that he will not introduce any *Monell*-related evidence. The only dispute concerns the testimony of Evelyn White. White is the Internal Affairs Division agent who investigated a complaint filed by Janusz.

Defendants contend that White's testimony relates solely to the *Monell* claim and is therefore irrelevant. Janusz agrees not to elicit any *Monell* testimony from White but seeks to

question her concerning her reasons for not interviewing Paula Siragusa, the passenger in Janusz's car. At her deposition, White testified that she did not interview Siragusa because she could have been an informant.

Defendants object to this opinion as irrelevant and speculative. The court disagrees. The opinion is relevant because it supports Janusz's claim that Siragusa was an informant, which in turn supports his conspiracy claim. The opinion is a permissible lay opinion because it is rationally based on White's perception that drugs were involved and that the police did not list the informant's name.

Accordingly, the motion is granted insofar as it seeks to exclude *Monell* related evidence, but denied insofar as it seeks to bar the testimony of White.

**Defendants' Motion in Limine Number 5: To Bar Improper Character Evidence**

Defendants move to bar improper character evidence, including complaint register files documenting citizen complaints against Defendants and any reference to Joseph Miedzianowski. Janusz states that he intends to introduce the complaint register files only if Defendants put their character at issue by suggesting that they are exemplary officers, and that he has no intention of making any reference to Joseph Miedzianowski. Accordingly, the motion is granted by agreement of the parties.

**Defendants' Motion in Limine Number 6: To Bar Evidence Relating to Alan Lucas's Divorce Proceedings and Testimony from Josephine Lucas**

Defendants move to bar evidence relating to Alan Lucas's divorce proceedings and testimony from Josephine Lucas. Janusz states that he intends to introduce such evidence and testimony only if Defendants put Alan Lucas's character at issue by suggesting that he is an exemplary officer. Accordingly, the motion is granted by agreement of the parties.

**Defendants' Motion in Limine Number 7: To Bar Testimony of or Evidence Related to John Grizzoffi**

Defendants seek to bar any evidence related to police officer John Grizzoffi, claiming that such evidence is irrelevant and would confuse the issues and mislead the jury.

Janusz contends that this evidence is relevant because it supports Jansusz's conspiracy claim. That claim alleges that Defendants entered into an agreement with Paula Siragusa, the Morizzo brothers, Grizzoffi, and others to have Janusz arrested so that he would be tainted as a witness in a lawsuit brought by Keystone Illinois, Inc. ("Keystone") against the Morizzo brothers. Judge Nordberg denied Defendants' motion for summary judgment with respect to the conspiracy claim, finding that "the evidence of a 'set up' is sufficient to let the jury observe the witnesses and view the exhibits to determine who is lying." *Janusz v. City of Chi.*, 797 F. Supp. 2d 884, 891 (N.D. Ill. 2011).

In its opposition to Defendants' motion for summary judgment, Janusz submitted evidence suggesting that Grizzoffi played a role in the conspiracy by copying Janusz's confidential police records shortly after he was arrested and forwarding those records to Anthony Morizzo. Grizzoffi previously worked part-time for Keystone and knew the Morizzo brothers. Janusz alleges that Anthony Morizzo used the records he received from Grizzoffi to persuade Keystone to settle the lawsuit by arguing that Janusz's arrest tainted him as a credible witness. Keystone settled the lawsuit and then fired Janusz on January 19, 2002.

Defendants argue that the evidence relating to Grizzoffi is too attenuated to establish a conspiracy because Grizzoffi did not participate in the arrest, did not provide evidence to the officers, was not involved in the prosecution of Janusz, and was not named as a defendant in this case. But the fact that there may be no direct evidence linking Grizzoffi to a conspiracy does not render the Grizzoffi evidence irrelevant, as a "conspiracy is almost never susceptible to direct

proof, but rather must be established from circumstantial evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Henderson v. Harthsorn*, No. 08 C 2086, 2011 WL 11464, at *7 (C.D. Ill. Jan. 4, 2011) (citing *McClure v. Owens-Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). The Grizzoffi evidence helps establish a link, albeit an indirect one, between the police and the Morizzo brothers. The court agrees with Janusz that the evidence is relevant and would not overly confuse the issues or mislead the jury. The motion is denied.

## CONCLUSION

Given the foregoing, the following motions in limine are granted: Janusz's motions in limine Nos. 1 and 2 and Defendants' motions in limine Nos. 2, 5, and 6; the following motions in limine are granted in part and denied in part: Defendants' motions in limine Nos. 3 and 4; and the following motions in limine are denied: Janusz's motion in limine No. 3 and Defendants' motions in limine Nos. 1 and 7.

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 13, 2013