# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS M. JANUSZ, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Case No. 03 C 4402 |
| ) | |
| CITY OF CHICAGO, ALAN LUCAS, ) | Judge Joan B. Gottschall |
| PARRIS GEORGE, GINA LIBERTI, ) | |
| and AMY MUGAVERO LUCAS, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Based on a recent order issued in a related state court case, plaintiff Thomas Janusz filed a motion to reconsider asking the court to revisit its summary judgment ruling limiting the recoverable damages in this case. For the following reasons, the motion is denied.

### I. BACKGROUND

For purposes of this order, familiarity with the court's prior order addressing the defendants' motion for partial summary judgment and the related orders denying his motions to reconsider and to certify the summary judgment order for immediate appeal pursuant to 28 U.S.C. § 1292(b) is assumed. In sum, a convoluted chain of events culminated in Janusz's arrest in 2001. Janusz was subsequently terminated from his position at a Chicago funeral home based on its receipt of confidential police records sent by one of the arresting officers, based on a narcotics charge of which Janusz was ultimately exonerated. Janusz filed a state court lawsuit against the funeral home and two of its employees – *Janusz v. Keystone*, 03 L 8543 (Cir. Ct. Cook Cnty.) – and this federal court lawsuit raising § 1983 and related state law claims.

Specifically, in the state court case, Janusz alleged breach of his employment contract, defamation, and intentional infliction of emotional distress. In the fourth amended complaint filed in the federal case, he alleged, among other things, that the defendants' actions caused him to "suffer[] from post traumatic stress syndrome, and an exacerbation of his preexisting mood disorder and anxiety conditions, which in turn has resulted in [him] feeling powerless, humiliated and embarrassed. Also, his self esteem has been diminished. He has lost the sense of personal safety, which he previously enjoyed, and lost the joy of a normal life, which he also previously enjoyed." (Dkt. 324-1 at ¶ 64.) He sought to impose *Monell* liability against the City (Count I) and to require it to indemnify the individual defendants (Count IX). He also included conspiracy claims under both § 1983 and state law (Counts V and VI, respectively, which also include an allegation that the defendants' actions caused Janusz to suffer emotional distress), a Fourth Amendment claim based on an unlawful search of his residence (Count VII) and vehicle (Count XII), a § 1983 false arrest claim (Count XI), and state law claims of false arrest and imprisonment (Count I), malicious prosecution (Count III), abuse of process (Count IV), and intentional infliction of emotional distress (Count VIII).[1]

In the state court case, a jury awarded Janusz almost $3,200,000 in compensatory and punitive damages for the breach of his employment contract with the funeral home, defamation, and intentional infliction of emotional distress. The bulk of the damages award – $2,500,000 in

---

[1] In the fourth amended complaint, Janusz noted that he was denied leave to proceed with Counts I, II, VI, and VIII, and stated that he realleged these counts to preserve them for appellate review.

compensatory damages – was for intentional infliction of emotional distress. As this court stated in its summary judgment opinion:

> Judgment was entered in accordance with the jury's verdict. After post-trial motions were filed and denied, both parties appealed. On September 29, 2009, while the appeal was pending, the trial court was informed that the parties had settled, that "Keystone ha[d] paid Plaintiff all monies due and owing to him as the result of the Judgment previously entered against Keystone," that Janusz had executed a Release and Satisfaction in Keystone's favor, and that the parties stipulated to dismissing the case under 735 Ill. Comp. Stat. 5/12-183 and Illinois Supreme Court Rule 309. (See Defs.' 56.1(a)(3) Statement, ECF No. 343, Ex. I.) The judge, finding that "the Judgment previously entered against Keystone in the amount of Three-Million One-Hundred and Seventy-Seventy Thousand Five-Hundred and 00/100s United States Dollars ($3,177,500.00) has been remitted and paid in full," dismissed the case with prejudice.

(Dkt. 373 at 6.)

On November 1, 2011, and based on the state court's September 29, 2009 order, the defendants in this case filed a motion for partial summary judgment contending that the damages Janusz received in the state court case precluded him from seeking certain damages in his federal case. Specifically, they argued that given the state court's damages award, Illinois' single recovery rule barred Janusz from recovering additional damages for lost wages and the loss of normal life in his federal case.[2] They also asserted that the doctrines of collateral and judicial

---

[2] With respect to the single recovery rule, "[a] tort victim can obtain only one recovery for his harm, no matter how many tortfeasors inflicted it." *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987). As the Seventh Circuit explains:

> This principle is seen most clearly in cases where a group of tortfeasors inflicts an indivisible harm, as for example where one tortfeasor places a bucket under the plaintiff's chair, another fills it with gasoline, and a third drops a match into it, causing it to explode and injure the plaintiff. Because the injury is indivisible each tortfeasor is liable for the full harm. But the plaintiff's total recovery, from all tortfeasors together, is not allowed to exceed his total damages. So once the plaintiff has been fully compensated for his injuries by one or more of the tortfeasors, he may not thereafter recover any additional compensation from any

estoppel precluded Janusz from relitigating his claims for lost wages and the loss of normal life in federal court.

In his response to the defendants' motion for partial summary judgment, Janusz did not dispute that he suffered a single indivisible injury. Instead, he contended that the state court judgment had no preclusive effect because it had been vacated. As a fall-back, he argued that the defendants could use the state court damages award as a setoff to any damages awarded in the federal action. This court held that Janusz was "judicially estopped from arguing that he did not receive a full satisfaction of the judgment against the Keystone defendants in the State court case" based on a single indivisible injury. (*Id*. at 15.) It thus concluded that the state court damages award barred Janusz from seeking additional damages for lost wages and the loss of normal life in the federal court case based on events occurring after Keystone terminated Janusz's employment because any harm alleged caused by the federal defendants could not be disentangled from the harm caused by the state court defendants.

Janusz filed a motion to reconsider raising the damages issue. After the court denied his motion, Janusz filed a petition seeking leave to file an interlocutory appeal again raising the damages issue, which the court also rejected. On January 12, 2015, on the eve of trial in this 2003 case, Janusz filed another motion to reconsider.[3] As he puts it:

---

of the remaining tortfeasors.

*Id*. (internal citations and quotations omitted). Under Illinois' single recovery rule, therefore, a "plaintiff may not divide up her claim and bring successive proceedings to obtain additional damages. . . . regardless of whether or not the plaintiff has recovered all that he or she might have recovered in the initial proceeding." *Saichek v. Lupa*, 787 N.E.2d 827, 835 (Ill. 2003) (internal quotations omitted).

[3] The delay in scheduling a trial was, in large part, attributable to Janusz's health.

> In preparing for trial, Janusz's attorneys recently developed the idea that the state court may agree to modify the September 29, 2009 order to make clear that it was entered pursuant to a settlement if Janusz filed a petition seeking that relief pursuant to 735 ILCS 5/2-1401. This is an admittedly unusual use of Section 2-1401, which is typically invoked by defendants to vacate judgments entered against them. It is because this is an unusual use of Section 2-1401 that Janusz's attorneys did not previously think to use it in this way. However, after giving the matter thought and research, Janusz's attorneys concluded that they had a colorable basis to seek such relief under Section 2-1401.[4]

(Dkt. 478 at 4.)

Based on this theory, on December 18, 2014, Janusz filed a § 2-1401 petition with the state court in the *Keystone* case. In that petition, Janusz sought to modify the September 29, 2009 order to reflect that it had been entered based on a settlement with Keystone. The state

---

[4] The current version of § 2-1401 provides that:

(a) Relief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section . . . .

(b) The petition must be filed in the same proceeding in which the order or judgment was entered but is not a continuation thereof. The petition must be supported by affidavit or other appropriate showing as to matters not of record. All parties to the petition shall be notified as provided by rule.

(c) Except as provided in Section 20b of the Adoption Act and Section 2-32 of the Juvenile Court Act of 1987 or in a petition based upon Section 116-3 of the Code of Criminal Procedure of 1963, the petition must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years.

(d) The filing of a petition under this Section does not affect the order or judgment, or suspend its operation . . . .

735 Ill. Comp. Stat. § 5/2-1401.

-5-

court allowed the defendants in the federal case to file a "brief of interested non-party."[5] In this case, the defendants assert that during the five-year gap between the state court's 2009 order and the filing of the § 2-1401 petition, the original state court judge retired and Keystone ceased doing business and was acquired by another company. That company told Janusz that it would not object to his petition.

On January 9, 2015, the state court entered an order stating:

This Court, having reviewed the order entered on 9/29/2009, the Settlement Agreement dated 9/29/2009, and being familiar with the Circuit Court of Cook County's customary Procedures at the time of settlement, the Court determines that it is clear that the release in the Order of 9/29/2009 was effectuated and entered due to the Settlement.

(Dkt. 478 at Ex. 5.)

Janusz's current motion to reconsider is based on the January 9, 2015 order. Janusz contends that this order establishes that the *Keystone* case was dismissed pursuant to a settlement and that he "did not take any position to his benefit" in that lawsuit that is "inconsistent with any positions he has taken" in this action. (Dkt. 478 at 4.) He thus asks the court to reconsider its order barring him from re-litigating certain categories of damages in this case.

## II. LEGAL STANDARD

The court has the inherent authority to reconsider its interlocutory orders because such orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule

---

[5] The parties did not provide a copy of this document so the record does not show whether the federal defendants objected to the petition based on timeliness grounds. *See* 735 Ill. Comp. Stat. § 5/2-1401)(c) (a § 2-1401 must be filed within two years after the entry of the order or judgment but "[t]ime during which the person seeking relief is under legal disability or duress . . . shall be excluded").

54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). A motion to reconsider an interlocutory order serves a limited purpose in federal litigation; it is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier. *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). Rather, a motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it. *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

### III. DISCUSSION

This is the fourth time that the court has considered the damages issue. The changed circumstance presented by the motion to reconsider is the recent state court order dated January 9, 2015, addressing Janusz's § 2-1401 petition. As noted above, that order stated that "it is clear that the release in the Order of 9/29/2009 was effectuated and entered due to the Settlement." (Dkt. 478 at Ex. 5.) Janusz argues that the order shows that:

> despite the customary form language used in the Release and Satisfaction of Judgment, the Release and Satisfaction of Judgment and the September 29, 2009 order vacating the judgment pursuant to that Release were effectuated and entered due to the settlement. Because the judgment was vacated due to the settlement, it is not a final judgment and it has no preclusive effect in this lawsuit.

(*Id*. at 5.) He further argues that he "believes that the jury's determination of the amount of his damages was substantially lower than their actual amount." (*Id*. at 6.) According to Janusz, he merely wishes to be given the opportunity to prove that to the jury in this lawsuit, and states that if he prevails, the defendants would be entitled to an appropriate setoff. He reasons that setoff would prevent him from recovering twice for the same injury.

-7-

The court agrees with the defendants that Janusz's present motion rests on an oversimplified view of the reasoning in the summary judgment opinion. The court held that:

> Janusz and the Keystone defendants jointly represented to the state court that "in accordance with the Release and Satisfaction of Judgment attached to the Motion [to Dismiss], Keystone has paid Plaintiff all monies due and owing to him *as a result of the Judgment previously entered against Keystone. The Judgment having been thus fully satisfied*, the Parties agree that this Court can and should vacate the Judgment pursuant to [735 Ill. Comp. Stat. 5/12-183]." Janusz's present attempt to argue that the settlement was for less than the amount of the jury verdict or that there has been some alternate allocation is at odds with his earlier position. Second, the state court expressly relied on this representation – going so far as to state the precise amount of the jury's verdict – when it entered an order dismissing the appeal, discharging the appeal bond, and vacating the judgment. Finally, permitting Janusz to start from scratch in arguing his damages would clearly be to the detriment of the City defendants. The court will not permit this result.

(Dkt. 373 at 15) (internal citations omitted and emphasis in original.) Based on this reasoning, the court concluded that the doctrine of judicial estoppel and Illinois' single recovery rule barred most of the damages sought in the federal case. Therefore, this court did not limit Janusz's available damages in the federal case merely because Janusz could not establish that the state court judgment had been vacated based on a settlement.

In addition, as the defendants correctly note, regardless of whether the parties had also agreed to a settlement, Janusz agreed to vacate the judgment because it had been satisfied. The state court order stating (correctly or not) that the state court judgment was vacated due to a settlement does not, therefore, warrant reconsideration of the summary judgment ruling on damages.

Moreover, when this court originally concluded that judicial estoppel applied, it expressly considered the terms of the settlement. (*Id*. at 16.) It did so in the context of considering policy considerations underlying Illinois' Joint Tortfeasor Contribution Act. The court stated that under the Contribution Act, "[t]he requirement of 'good faith' is the only

-8-

limitation . . . place[d] upon the parties' right to settle." *Dubina v. Mesirow Realty Devel., Inc.*, 756 N.E.2d 836, 840 (Ill. 2001). The court then observed that it was "in no position to make a good faith determination with regard to the settlement agreement, as this court was not privy to the circumstances surrounding the state court case." (Dkt. 373 at 17.) The court also noted that the Contribution Act not only prevents double recovery, but also ensures that a nonsettling party need not pay more than its pro rata share of the liability.

> The court then compared the jury's verdict with the settlement and stated that:
>
> > at the very least, the reapportionment of damages in such a drastic fashion – and in a manner that would deprive the City defendants of much of their right to a setoff – highlights the need to apply judicial estoppel in this case. The jury determined that Janusz was owed $3,177,500 in damages by the Keystone defendants: $177,500 for lost wages from the breach of contract; $250,000 in compensatory and $250,000 in punitive damages on his defamation claims; and $2,500,000 in compensatory damages for intentional infliction of emotional distress. By contrast, under the settlement agreement Keystone agreed to pay $3,000,000: $125,000 for lost wages; $400,000 for defamation; $500,000 for enhancement of the bipolar condition; $10,000 for current and past medical bills; $390,000 for future medical bills; and $1,575,000 for physical injuries "not directly attributable to emotional damages." Of course, "damages are not assessed 'by defendant' or 'by claim' but 'for' an injury," *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 640 (7th Cir. 2011), and this reallocation would shift significant sums from emotional injuries to physical injuries.

(*Id*. at 17-18). Accordingly, the court held that because Janusz had conceded that only single, indivisible injuries were at issue, and because he was judicially estopped from arguing that he received less than a full satisfaction of the jury's verdict, damages for his injuries were capped at $3,177,500, as allocated by the jury.

The state court's January 9, 2015 order does not change this analysis. This court is still in no position to determine good faith. Nevertheless, the court is not inclined to revisit its conclusion that the settlement, viewed through the lens of the Contribution Act, underscored that allowing relitigation of the damages at issue would be unfair to the City defendants. *See Assoc.*

*Aviation Underwriters, Inc. v. Aon Corp.*, 800 N.E.2d 424, 435 (Ill. App. Ct. 2003) (good faith requirement is not satisfied when the effect of the settlement is to shift "a disproportionally large and inequitable portion of the settling defendant's liability onto the shoulders of another").

In addition, the federal defendants correctly observe that Janusz's argument that setoff would prevent prejudice due to a double recovery rings hollow because he does not specify whether the jury's verdict or the drastically different numbers in the settlement agreement are the appropriate measure. They also correctly note that the authority cited in Janusz's motion to reconsider all involves *collateral* estoppel, which is not at issue in this case given the court's reliance on *judicial* estoppel. Collateral estoppel and judicial estoppel are different doctrines.[6] Thus, the collateral estoppel cases cited by Janusz do not stand for the proposition that the doctrine of judicial estoppel is inapplicable in the circumstance at issue here, where a state court judgment was vacated because it was satisfied following a settlement.[7]

---

[6] "Under Illinois law, collateral estoppel requires that '(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action.'" *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 1739 N.E.2d 445, 451 (Ill. 2000)). By contrast, the doctrine of judicial estoppel generally turns on whether a party (1) took a clearly inconsistent position in the first of two judicial proceedings; (2) was successful in the first proceeding as a result of that position "'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'"; and (3) the opposing party would suffer an unfair detriment if the doctrine of judicial estoppel was not applied. *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

[7] Specifically, Janusz cites the following cases: *Garley v. Columbia LaGrange Hosp.*, 881 N.E.2d 370, 374-75 (Ill. App. Ct. 2007) (a judgment that was vacated due to a successful appeal is not final for purposes of collateral estoppel); *Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986) (a judgment that is the subject of a pending appeal is not final for purposes of collateral estoppel); *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 340 (7th Cir. 1991) (a judgment that was vacated following a settlement "has no collateral estoppel or res judicata effect under Illinois law"); *U.S. Philips Corp. v. Sears Roebuck & Co.*, No. 85 C 5366, 1992 WL 296361, at *2-3 (N.D. Ill. Oct. 14, 1992) ("a vacated judgment loses its preclusive

Next, the court finds that the express language used by the state court judge who signed the September 29, 2009 dismissal order is compelling. In the order, that judge cited 725 Ill. Comp. Stat. § 5/12-183(h), which at the time (and now) provides that "[u]pon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action." As the court noted in its summary judgment opinion, the trial court was aware that the parties had reached a settlement when it vacated the judgment pursuant to § 12-183. Thus, the state court's January 9, 2015 order stating that the release was "effectuated and entered due to the Settlement" does not change anything. Now in 2015, and back in 2009, the parties reached a settlement and then the state court vacated the judgment pursuant to § 12-183 because the judgment had been satisfied.

Finally, the court finds that Janusz's last-minute attempt to engage in revisionist history with respect to the state court proceedings further supports its application of the doctrine of judicial estoppel to bar many of the categories of Janusz's claimed damages. "As a general rule, petitions brought pursuant to section 2-1401, to be legally sufficient, must be filed within two years of the order or judgment, the petitioner must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence." *Sarkissian v. Chicago Bd. of Educ.*, 776 N.E.2d 195, 201 (Ill. 2002). Janusz concedes that he filed his § 2-1401 petition in an effort "to make clear that [the dismissal order] was entered pursuant to a settlement" and that the idea of using § 2-1401 came to his attorneys as they

---

effect [for the purposes of collateral estoppel], regardless of whether or not the judgment was vacated pursuant to a settlement"), aff'd by 55 F.3d 592 (Fed. Cir. 1995) (under Seventh Circuit precedent, a vacated state court judgment does not have collateral estoppel effect); and *Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005) (same).

prepared for the federal trial. (Dkt. 478 at 4.) The state court (with no objection from the entity that is the successor to the state court defendant and over the objection of the defendants in this case, who were not parties in the state court case) granted relief under § 2-1401 despite the passage of time and Janusz's representation that he sought to modify the judgment to reflect the parties' actual intent so he could "address the concerns raised in the District Court's summary judgment order." (Dkt. 478-1 at 10.)

This court cannot and does not opine on the propriety of the January 9, 2015 state court order, although it observes that the use of a § 2-1401 petition to obtain an advantage in a different case is troubling. The third element of the doctrine of judicial estoppel asks if the opposing party would be unfairly prejudiced if the doctrine of judicial estoppel was not applied. *Walton*, 643 F.3d at 1002. Janusz's attorneys' statement that they conceived of the idea of seeking relief under § 2-1401 on the eve of trial does not erase that fact that their failure to act sooner meant that more than five years passed between the entry of the September 29, 2009 order pursuant to § 12-183 and the filing of Janusz's § 2-1401 petition. During this period, Keystone ceased doing business and the state court judge who signed the dismissal order retired. The passage of time, therefore, clearly benefitted Janusz. Setting aside all of the other issues discussed above, the court finds that it would be fundamentally unfair to allow Janusz to profit from this kind of manipulation of the litigation process.[8]

**D.     Conclusion**

---

[8] In addition, the court notes that Janusz's eleventh-hour filing of his latest motion to reconsider in this almost twelve-year-old case would require, if granted, continuation of the trial date (scheduled to commence today, January 20, 2015, pursuant to an order entered on May 5, 2014) again to allow the federal defendants an opportunity to address Janusz's damages claims that the court barred in its May 10, 2012 summary judgment order.

For the reasons stated above, Janusz's motion to reconsider [478] is denied. Janusz has represented that if the court were to deny this motion, he will dismiss his remaining claims so the court can enter a final and appealable judgment. He is directed to prepare a draft stipulation to dismiss and attempt to reach agreement with the defendants. A status hearing is set for January 30, 2015, at 9:30 a.m. If a stipulation to dismiss is filed prior to this date, no appearance will be necessary.


Date: January 20, 2015                              /s/
                                            Joan B. Gottschall
                                            United States District Judge